UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM A. PILLARS,<br><br>    Petitioner,<br><br>  vs.<br><br>A.A. LAMARQUE, Warden,<br><br>    Respondent.<br>_____ | No. C 02-0127 JW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(Docket Nos. 8, 26, 27, 29) |

## INTRODUCTION

Petitioner William A. Pillars, a California state prisoner who is proceeding pro se, filed a petition in this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging that errors made by the state trial and appellate courts resulted in an unconstitutional conviction and sentence. The Court dismissed the first petition with leave to amend. Petitioner filed an amended petition. The Court then ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and lodged exhibits with the Court. Petitioner filed a

1  traverse and several supplemental documents and motions. Having reviewed the
2  briefs and the underlying record, the Court concludes that petitioner is not entitled to
3  relief based on the claims presented and will deny the petition.

**BACKGROUND**

The charges against petitioner arose from his sale of base cocaine to undercover California police officers in 1997. People v. Pillars,[1] Opinion of the California Court of Appeal for the First Appellate District ("Op.") at 1 (Ans., Ex. F). A Santa Clara Superior Court jury convicted petitioner in 1998 of selling base cocaine (Cal. Pen. Code § 11352(a)). Id. The Superior Court of Santa Clara found true the allegation that petitioner had four prior serious felony convictions and sentenced him to twenty-five years to life. Id. at 3. The California Court of Appeal for the First Appellate District affirmed the conviction and denied the petition for a writ of habeas corpus. Pet. at 4. The California Supreme Court denied both direct review and habeas corpus relief. Id., Ans., Exs. H & M. Petitioner filed this federal habeas action in 2002.

The facts underlying the conviction are easily told. Two undercover police officers in Pittsburgh, California, in March, 1997, drove by petitioner on the street and asked, "Is anything going on?" Op. at 1. After petitioner asked one officer what he needed, the officer said that he wanted a "20." Id. at 2. Petitioner asked to see the officer's money and the officer handed petitioner a $20 bill, marked with the initials "DY." Id. Petitioner gave the officer a rock of cocaine and said, "You need some more, come see me." Ans., Ex. B2 at 257. The undercover officers then left the scene and notified the arrest team, which then arrested petitioner. Op. at 1. After petitioner's arrest, the police found the $20 bill marked with "DY" and two

---

[1] This an unpublished opinion. The state appellate case number is A088120. The superior court case number is 980657-1.

Order Denying Petition for Writ of Habeas Corpus
N:\Pro - Se\March 2008\02-0127 Pillars127.hcruling.md.wpd    2

more rocks of cocaine. Id.

At trial, petitioner called his friend Lydell Heard to testify. Id. Heard testified that on the day of the arrest he spent the entire day with petitioner and did not see petitioner sell or possess any drugs, but he did observe police driving in the neighborhood. Id. 2. Heard testified that the police ordered petitioner and Heard off Heard's mother's front porch to search them before they arrested Petitioner. Id.

As grounds for federal habeas relief, petitioner alleges that (1) the trial court deprived him of the right to a jury drawn from a cross-section of the community, as guaranteed by the Sixth Amendment; (2) the trial court erred in excluding evidence that petitioner was falsely accused, thereby violating petitioner's right to due process; and (3) the trial court failed to dismiss a juror for misconduct and intentional concealment, thereby violating petitioner's right to an impartial jury. Order to Show Cause ("OSC") at 2.

## STANDARD OF REVIEW

A federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. Sass v. California Board of Prison Terms, 461 F.3d

1123, 1126-27 (9th Cir. 2006).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Williams (Terry), 529 U.S. at 413.

A reviewing federal court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.

The state court decision to which section 2254(d) applies is the "last reasoned decision" of the state court. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, here the opinion of the California Court of Appeal. See Nunnemaker at 801-06; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

///

///

///

Order Denying Petition for Writ of Habeas Corpus
N:\Pro - Se\March 2008\02-0127 Pillars127.hcruling.md.wpd       4

**DISCUSSION**

**I.     Alleged Exclusion of African-Americans from the Jury**

Petitioner contends that the prosecutor systematically excluded African-Americans from the jury pool and therefore the trial court committed a constitutional error when it denied petitioner's motion challenging the exclusions.  OSC at 2. Respondent contends that the prosecutor had legitimate, nondiscriminatory reasons to use the five peremptory challenges in question.  Ans., P. & A. at 13.  The state appellate court stated that "[t]he reasons enunciated by the prosecutor . . . were legally sufficient to justify a challenge, and the trial court's ruling accepting them is supported by substantial evidence."  Op. at 8.  Petitioner's jury had no African-Americans on it.  Ans., Ex. B8 at 118, 119.

The facts giving rise to petitioner's contention are as follows.  The prosecutor excluded jurors 9, 11, 33, 47, and 77.[2]  Op. at 5.  In response, petitioner brought two Wheeler motions, also known as Batson motions, contending that the prosecutor excused those jurors because they were African-American.[3]  Id. at 3.  The trial court denied both motions, finding that petitioner had not made out a prima facie case and

---

[2] Designated in the trial transcript as jurors 180118853, 180018931, 180008089, 187811899, and 180010660, respectively.  Op. at 5.

[3] Petitioner made a Wheeler motion in state court.  In California, a party who believes his opponent is using his peremptory challenges to strike jurors on grounds of group bias alone may raise the point by way of a timely motion.  People v. Wheeler, 22 Cal. 3d 258, 280 (1978).  The Wheeler motion procedure used by California courts does not satisfy the constitutional requirement laid down for the first step of Batson v. Kentucky, 476 U.S. 79 (1986).  See Johnson v. California, 545 U.S. 162, 168 (2005); Wade v. Terhune, 202 F.3d 1190, 1197 (9th Cir. 2000).  Since August 3, 1984, California courts have imposed the more stringent requirement that the defendant "show a strong likelihood," Wheeler, 22 Cal. 3d at 280, rather than merely "raise an inference," Batson, 476 U.S. at 96, that the prosecutor had excluded venire members from the petit jury on account of their race.  See Wade, 202 F.3d at 1196-97.  Because California courts using the Wheeler procedure have not applied federal law as clearly established by the United States Supreme Court, a federal habeas court need not defer to the California court's findings as it would otherwise be required to do under 28 U.S.C. § 2254(d).  See id., 202 F.3d at 1197.

therefore the prosecutor was not required to justify his challenges. Id. All the same, the prosecutor articulated his reasons. The prosecutor excluded juror 9 because he "had an unconventional or iconoclastic appearance, including multiple body piercings, earring in each ear, a ring through his eyebrow, and some sort of ring or metal jewelry in his tongue." Id. at 5-6. "[T]he trial court noted and [petitioner] conceded [] that juror 9 was not African-American at all," but perhaps, as trial counsel speculated, "a person of color," maybe "of Latin American or Filipino ancestry." Id. at 5; Ans., Ex. B8 at 115 (Reporter's Transcript ("RT")). The prosecutor never stated her reasons for excluding juror 11. Ans., P. & A. at 10. However, during the voir dire of Juror 11, who "was apparently of African-American descent, although the prosecutor stated she did not know this juror's ethnicity," it was discovered that juror 11 had a family member who had been prosecuted by the Contra Costa District Attorney's Office for the crime of robbery. Op. at 6. The prosecutor excluded juror 33 "because the juror was wearing sunglasses inside the courtroom [on both days of jury selection], and had been 20 minutes late for the start of the court proceedings, showing some disrespect or inattention to social norms."[4] Id., Ans., Ex. B8 at 126. Juror 33 stated that her father was convicted of marijuana possession and had served a sentence for the crime. Ans., Ex. B4 at 222, 234.[5] The trial court found that juror 33 was not African-American. Op. at 6.

Jurors 47 and 77, both African-American, were also excluded. The

---

[4] Petitioner contends that another juror, and not juror 33, was late to the start of court proceedings, but does not dispute that she was sunglasses inside the courtroom. Trav., P. & A. at 19.

[5] This juror was designated as juror 33 and, at times, juror 12. Ans., Ex. B4 at 234. Her designation as juror 33, her exclusion by the prosecutor followed immediately by trial counsel's statement that she "will have a motion related to this peremptory [challenge]," leads the Court to believe that juror 33 is the same individual who is at times referred to as juror 12 and 180008089.

1  prosecutor excluded juror 47 because, among other reasons, he "was sloppily
2  dressed or unkempt . . . and had made eye contact with and nodded at the defendant
3  upon entering the courtroom." Id. at 7.  Juror 47 had also been convicted of two
4  crimes by the district attorney's office, "contradicting his response on the juror
5  questionnaire to the effect that he had not been convicted of any crimes." Id.  Juror
6  77 was excluded because she "recounted [with a disturbing lack of concern] that
7  numerous friends and family members had been involved with illegal drugs or had
8  been victims of violence" and that juror 47 had been seen by the trial court with his
9  arm around juror 77.  Id. at 8; Ans. Ex. B10 at 154-155.

10        The use of peremptory challenges by either the prosecution or defendant to
11  exclude cognizable groups from a petit jury may violate the Equal Protection Clause.
12  Georgia v. McCollum, 505 U.S. 42, 55-56 (1992).  In particular, the Equal
13  Protection Clause forbids the challenging of potential jurors solely on account of
14  their race.  Batson v. Kentucky, 476 U.S. 79, 89 (1986).  A party may raise an equal
15  protection claim when a prospective juror is excluded because of race, regardless of
16  whether the party and the excluded juror share the same race.  Powers v. Ohio, 499
17  U.S. 400, 406 (1991).

18        Batson permits prompt rulings on objections to peremptory challenges
19  pursuant to a three-step process.  First, the defendant must make out a prima facie
20  case that the prosecutor has exercised peremptory challenges on the basis of race "by
21  showing that the totality of the relevant facts gives rise to an inference of
22  discriminatory purpose." Batson, 476 U.S. at 93-94.  Second, if the requisite
23  showing has been made, the burden shifts to the prosecutor to articulate a
24  race-neutral explanation for striking the jurors in question.  Id. at 97; Wade, 202
25  F.3d at 1195.  Finally, the trial court must determine whether the defendant has
26  carried his burden of proving purposeful discrimination.  Batson, 476 U.S. at 98;

28  Order Denying Petition for Writ of Habeas Corpus
    N:\Pro - Se\March 2008\02-0127 Pillars127.hcruling.md.wpd     7

Wade, 202 F.3d at 1195. To fulfill its duty, the court must evaluate the prosecutor's proffered reasons and credibility in light of the totality of the relevant facts, using all the available tools including its own observations and the assistance of counsel. Mitleider v. Hall, 391 F.3d 1039, 1047 (9th Cir. 2004); Lewis v. Lewis, 321 F.3d 824, 831 (9th Cir. 2003). In evaluating an explanation of racial neutrality, the court must keep in mind that proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Hernandez v. New York, 500 U.S. 352, 355-62 (1991). It also should keep in mind that a finding of discriminatory intent turns largely on the trial court's evaluation of the prosecutor's credibility. Rice v. Collins, 546 U.S. 333, 340-42 (2006); see also Lewis, 321 F.3d at 830.

Under AEDPA, a state court's findings of discriminatory intent are presumed sound unless the petitioner rebuts the presumption by clear and convincing evidence. Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (citing 28 U.S.C. § 2254(e)(1)). A federal habeas court may grant habeas relief only "if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge." Rice, 546 U.S. at 338-41.

Petitioner's claim is without merit. Even assuming, without deciding, that all the excluded jurors were of a cognizable group, the prosecutor offered legitimate and nondiscriminatory reasons to exclude them – lack of respect for the trial court, lack of trustworthiness and credibility, possible prejudice against the justice system, unstable social histories, etc. Petitioner has not presented any evidence that would make it unreasonable for the Court to credit the prosecutor's race-neutral explanations. Accordingly, the Court finds that the prosecutor's use of her peremptory challenges did not violate the Equal Protection Clause.

Because the Court finds no evidence of a constitutional error, the Court concludes that the state court's decision was not contrary to, or an unreasonable

application of, clearly established Supreme Court precedent, nor that it was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

## II.     The Trial Court's Exclusion of Evidence

Petitioner contends that the trial court failed to admit four items of defense evidence tending to prove that petitioner was falsely accused of the crime, thereby violating his Sixth Amendment and due process rights. Pet. at 8; OSC at 2.

"State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 318, 323 (2006) (quotations and citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence). This latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. See Holmes, 547 U.S. at 323. The defendant, not the state, bears the burden to demonstrate that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental." Egelhoff, 518 U.S. at 47 (internal quotations and citations omitted).

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia v. Cambra, 360 F.3d 997,1004 (9th Cir. 2004); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000). The court must also give due weight to the state interests underlying the state evidentiary rules on which

the exclusion was based. See Chia, 360 F.3d at 1006; Miller v. Stagner, 757 F.2d 988, 995 (9th Cir. 1985).

### A.     Informant Evidence

Petitioner contends that he sought to introduce testimonial evidence that one of the undercover officers had asked petitioner to become an informant. Op. at 9. Petitioner contends that because he refused to act as an informant, the police falsely accused him of selling cocaine base. Trav. at 25. The trial court excluded the evidence on the grounds that it was irrelevant, and hearsay, and that its admittance would entail an undue consumption of time. Op. at 9. The state appellate court found that the trial court did not abuse its discretion because "[t]he proffered evidence was not relevant to guilt or innocence, and if anything merely showed the police must have concluded that [petitioner] could lead them to his narcotic suppliers and aid in the apprehension of others." Id.

Petitioner's claim is without merit. Looking at the first Chia factor, whether the police asked petitioner to be an informant has little or no probative value as to the central issue whether petitioner sold cocaine base. Even if, looking at the second and third Chia factors, the Court assumes, without deciding, that the evidence was reliable and capable of evaluation by the trier of fact, petitioner has not shown that the officer's excluded testimony is the sole evidence or a major part of the defense. Furthermore, there is considerable evidence to support petitioner's conviction, including the testimony of several officers and petitioner's possession of cocaine base and the marked currency.

### B.     Witness Testimony

Petitioner contends that the trial court violated his constitutional rights by refusing to allow a defense witness to testify that petitioner was seen on the street after his arrest . Pet. at 3. "[This] evidence was offered to show that petitioner had

Order Denying Petition for Writ of Habeas Corpus
N:\Pro - Se\March 2008\02-0127 Pillars127.hcruling.md.wpd        10

1  been released by the police that evening after the arrest," which would show that
2  "the police did not have a basis to hold petitioner that evening." Trav. at 25, 28. It
3  appears that the state appellate court did not rule on this claim.

Petitioner's claim is without merit. The evidence seems of little probative value and adds little or nothing to the defense. Petitioner's reappearance on the street after his arrest could have any number of meanings, including that he was out on bail. That such evidence would have cast doubt on the strength of the prosecution's case is enormously unlikely. Because it lacks sufficient probative value, and giving due weight to the trial court's concerns about excluding irrelevant and unnecessary evidence, the Court cannot say that the state court committed a constitutional error.

### C. Evidence of Selective Arrests

Petitioner contends that the trial court's exclusion of evidence that "there were between four and eight other [drug] buys in the area[, and during the time, of petitioner's arrest] that did not result in arrests" deprived petitioner of his right to present evidence in his defense. Pet. at 9. The trial court excluded the evidence on the basis that its introduction would be an undue consumption of time. Ans., Ex. B5 at 576 (RT). It appears that the state appellate court did not rule on this claim.

Petitioner's claim is without merit. Petitioner fails to provide evidence regarding these alleged drug-buys, such as whether there was sufficient evidence against these persons and therefore the refusal of the police to arrest them and yet arrest petitioner indicates some prejudice toward petitioner. Without a clear detailing of the circumstances of these alleged drug buys, the Court must deny this claim.

### D. Exclusion of Evidence of Employment Status

Petitioner contends that the trial court erred when it refused to admit

evidence that petitioner was employed as an insulator at the time of his arrest. Pet. at 9. This evidence, petitioner contends, "was relevant to show that petitioner lacked a financial motive to sell drugs." Trav. at 28. The trial court excluded the evidence as irrelevant, but allowed through petitioner's testimony, should he testify. Ans., Ex. B5 at 576 (RT).

Petitioner's claim is without merit. Though this evidence may have been relevant to the question of motive, the Court cannot say that the trial court made a constitutional error by excluding it. Whether petitioner had a financial motive to sell drugs lacks probative value when one considers that he was charged with selling cocaine base – of which there is ample evidence – and that he received a mere $20 from the officers.

As to all petitioner's claims regarding excluded defense evidence, the Court finds no evidence of a constitutional error, and therefore the Court concludes that the state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor that it was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (1), (2).

### III.     Trial Court's Refusal to Remove a Juror for Misconduct

Petitioner contends that the trial court violated his Sixth Amendment rights by failing to remove a juror for misconduct and "intentional concealment during voir dire examination." Am. Pet. at 10. Respondent contends that there was no juror misconduct and that the trial court's ruling did not violate petitioner's constitutional rights. Resp't's Supplemental Mem. of P. & A. at 4. Respondent points out that the witness "was not a percipient witness to this crime but merely testified as an expert on the possession of narcotics for sale." Id. The state appellate court apparently did not rule on this claim.

Order Denying Petition for Writ of Habeas Corpus
N:\Pro - Se\March 2008\02-0127 Pillars127.hcruling.md.wpd      12

The facts giving rise to petitioner's contention are as follows. After the start of trial, the deputy prosecutor alerted the trial court that prosecution witness Robert Semas, one of the arresting officers, recognized juror 12, Brian Jones, as his former neighbor in Pittsburgh, California. Ans., Ex. B2 at 347-48. Jones, at the request of the trial court, remained in the courtroom after the day's proceedings in order to answer questions regarding this matter. Id. at 347-48. Jones stated that he knew Semas three years ago, that Semas was an acquaintance, not a friend, that he never knew Semas's last name (knowing him as "Rob"), had seen Semas only two or three times and had only the most perfunctory of conversations with him. Id. at 348-50. "[Officer Semas] was an ex-girlfriend's coworker's boyfriend and I went to his apartment once or twice to see my girlfriend at the time who was down there visiting a friend of hers." Id. at 350-51. When asked whether he was "going to give more credibility" to Semas's testimony, Jones said, "No." Id. at 352. The trial court, over trial counsel's objections, decided not to remove Jones. Id. at 370.

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; see Irvin v. Dowd, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." Tinsley v. Borg, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotations omitted). The Ninth Circuit has recognized that to disqualify a juror for cause requires a showing of actual bias or implied bias, that is "bias in fact, or bias conclusively presumed as a matter of law." United States v. Gonzalez, 214 F.3d 1109, 1111-12 (9th Cir. 2000).

However, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982). The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually

1  impossible to shield jurors from every contact or influence that might theoretically
2  affect their vote.  Id.  Due process only means a jury capable and willing to decide
3  the case solely on the evidence before it and a trial judge ever watchful to prevent
4  prejudicial occurrences and to determine the effect of such occurrences when they
5  happen.  Id.  Such determinations may properly be made at a hearing.  Id.

6  Petitioner's claim is without merit.  It is a serious concern whether a witness
7  and a juror have a social relationship.  However, under the facts of this case the
8  Court cannot say that the trial court made a constitutional error by retaining the juror
9  despite their having known each other before the trial.  The fact that the prosecutor
10 promptly alerted to trial court of this possibly problem, that the trial court addressed
11 the issue as soon as possible, that the witness and juror had the most tenuous of
12 social connections, and that the trial court accepted the juror's statement that he
13 could evaluate the facts fairly, are persuasive that there was no due process
14 violation.

15 Furthermore, the Court finds no evidence in the record to support
16 petitioner's contention that Jones knowingly committed misconduct or intentionally
17 concealed information.

18 Accordingly, the Court finds no evidence of a constitutional error, and
19 therefore the Court concludes that the state court's decision was not contrary to, or
20 an unreasonable application of, clearly established Supreme Court precedent, nor
21 that it was based on an unreasonable determination of the facts in light of the
22 evidence presented.  28 U.S.C. § 2254(d) (1), (2).

### PENDING MOTIONS

24 There are three pending motions in this action.  The first is petitioner's
25 motion for an order shortening time to decide petitioner's modified motion to amend
26 the pending petition.  Docket No. 26.  Petitioner states that "[t]he purpose of the

Order Denying Petition for Writ of Habeas Corpus
N:\Pro - Se\March 2008\02-0127 Pillars127.hcruling.md.wpd      14

instant motion [is] to compel adjudication of the pending matters." Id. at 2. This order constitutes an adjudication of the pending matters and therefore petitioner's motion is DENIED as moot.

In the second motion, petitioner asks the Court to clarify its October 19, 2007 order directing respondent to file a supplemental answer. Docket No. 27. Petitioner states that "it is unclear to [p]etitioner as to whether or not this [C]ourt has either received or taken any action on the converted motion to amend transferred to it by the Ninth Circuit."

The factual background of this motion is as follows. While this habeas action was pending, petitioner applied to the United Sates Court of Appeals for the Ninth Circuit for authorization to file a second or successive federal habeas petition in this Court. The Ninth Circuit issued an order stating that petitioner's application "is construed as a motion to amend the petition for habeas corpus currently pending before the district court. As such, the Clerk shall transfer the motion to the United States District Court . . . for consideration by the district court." Docket No. 27, Ex. 1. This Court then directed respondent to file a supplemental answer addressing a new claim put forth in the amended petition. Respondent filed a supplemental answer.

Petitioner's motion is DENIED as moot. Respondent has filed a supplemental answer and the instant order constitutes action on the matter transferred to it by the Ninth Circuit. The Court has considered all of petitioner's filings in reaching its decision.

The third is petitioner's motion for sanctions against respondent for failing to file a motion or notice of non-opposition to petitioner's motion to amend his petition and addendum. Docket No. 29. "[I]t is respectfully requested that this court issue as a sanction[] a preclusionary order deeming petitioner's motion to amend (as

Order Denying Petition for Writ of Habeas Corpus
N:\Pro - Se\March 2008\02-0127 Pillars127.hcruling.md.wpd     15

converted by the Ninth Circuit) and his 2002 amended petition (claim three) to be admitted and not opposed by respondent; or any other action this court may deem appropriate as a sanction for respondent's noncompliance." Docket No. 29 at 6.

The Court will deny petitioner's motion. The Court considers the filing of respondent's supplemental answer as a notice of non-opposition and therefore the Court finds that sanctions would be unwarranted. Accordingly, petitioner's motion is DENIED.

## CONCLUSION

The Court concludes that the state court's adjudication did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. The Court also concludes that its adjudication did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, for the foregoing reasons, the Court DENIES the petition. The clerk shall close the file.

**IT IS SO ORDERED**.

Dated:   March 26   , 2008

JAMES WARE
United States District Judge